IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NANCY BURGETT,

          Plaintiff,

vs.                               Case No. 09-1265-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial
gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On December 1, 2008, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 8-16). Plaintiff alleges that she has been disabled since September 9, 2006 (R. at 8). Plaintiff is insured for disability insurance benefits through December 31, 2006 (R. at 10). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity from her alleged onset date of September 9, 2006 through the date she was last insured, December 31, 2006 (R. at 10). At step two,

the ALJ found that plaintiff had the following severe impairments: fibromyalgia; chronic fatigue syndrome; osteopenia; dysthymic disorder; degenerative disc disease of the cervical, thoracic and lumbar spine; and carpal tunnel syndrome (R. at 10). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 11). After determining plaintiff's RFC (R. at 12), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 15). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 15-16). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 16).

**III. Did the ALJ base his decision on vocational expert (VE) testimony which conflicted with the Dictionary of Occupational Titles (DOT), in violation of SSR 00-4p?**

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT [Dictionary of Occupational Titles] (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704

5

at *1.  In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work.  Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled.  At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency.  If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information.  2000 WL 1898704 at *2.

Plaintiff's RFC, which allowed plaintiff to sit for 6 hours in an 8 hour workday, and stand or walk for 2 hours in an 8 hour workday, included a limitation that plaintiff have the option to change positions or stand every 30 to 60 minutes (R. at 12).  These limitations were included in the hypothetical question to the VE (R. at 244).  With these limitations, the VE indicated in a written interrogatory that a person could perform the jobs of loader, wafer breaker (semi-conductors), and wire wrapper/patcher (R. at 245).  The VE indicated that there were no conflicts with

her opinions and the occupational information contained in the DOT and/or the SCO (R. at 246). The ALJ concluded that plaintiff could perform other jobs that exist in significant numbers in the national economy, including the jobs identified by the VE (R. at 16).

The VE identified three sedentary jobs that plaintiff could perform (R. at 245). Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally. DOT (4th ed. 1991 at 1013); 20 C.F.R. § 404.1567(a) (2010 at 392). Neither the DOT nor the SCO specifically discuss the option to change positions or stand every 30 to 60 minutes. The VE was aware that plaintiff's RFC included the option to change positions or stand every 30 to 60 minutes, and she testified that plaintiff could perform the three jobs previously identified, and that there was no conflict between the VE's opinion and the occupational information in the DOT and/or the SCO. In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case. Segovia v. Astrue, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007).

In the case of Cowen v. Astrue, Case No. 09-1206-SAC, 2010 WL 2925251 (July 21, 2010), the ALJ included in the RFC findings

7

for the claimant a limitation allowing claimant the option to change positions occasionally from sitting to standing. Cowen, Doc. 19 at 19. Relying on Segovia, this court held that the VE's testimony regarding the impact of the sit/stand option did not conflict with the DOT and SCO so much as it clarified how broad categorizations applied to this specific case. Id., Doc. 19 at 28. An ALJ can rely on the testimony of the VE which is based on his/her professional experience. Rogers v. Astrue, 2009 WL 368386 at *4 (10th Cir. Feb. 17, 2009).

The facts of the case presently before the court (Burgett) are quite similar to those in Cowen. The court finds that there was no clear conflict requiring clarification under SSR 00-4p, and the VE stated that there was no conflict between the evidence she provided and the information in the DOT. As this court held in Cowen, the ALJ did not err by relying on the VE's testimony that plaintiff could perform the three jobs identified by the VE in light of the limitation that plaintiff have the option to change positions or stand every 30 to 60 minutes.

**IV. Did the ALJ err in his credibility analysis?**

Plaintiff argues that the ALJ erred in his credibility analysis (Doc. 14 at 6). Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely

and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be

9

affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ's credibility analysis is as follows:

> The claimant's allegations that her pain is disabling to the extent that she was unable to engage in work activity is not supported by her description of her daily activities. She carries on with many normal activities. The claimant testified that she cares for dogs, does Bible study, reads the paper and tries to clean the house. She testified that she does the laundry if someone carries the basket downstairs. The claimant reported that she cooks simple meals daily and does some cleaning. She stated that she drives herself

and shops 1-2 times a week for up to 2 hours as sometimes she needs to stop and rest. (Exhibit B2E) The claimant testified that she also cares for her parents. The claimant testified that her parents are divorced and her mother lives in Oklahoma. She reported that she goes to Oklahoma to care for her mother. (Exhibit B6F/5,7) The claimant testified that she cares for her father but does not assist with bathing or heavy work. She testified that her father can function but has dementia and arthritis. She reported that she helped him after his shoulder surgery in mid 2006. (Exhibit B6F/5)

The claimant testified that she could not write a one-page letter because her hands would cramp. However, the record shows she was doing well 3 months after surgery on her hand and thumb. (Exhibit B15F) The claimant testified that she knows sign language and although it hurts her shoulders, she signs during a one hour church service since she is the only one to do it. She also reported that she is a Marine mom and communicates every day via computer with other Marine Moms friends/family. (Exhibit B3E) The fact that the claimant can do sign language for an hour per week and daily computer work indicates that the claimant has better hand functioning than she alleges.

The claimant testified that she could lift 5-8 pounds and currently works part time in a baby nursery with 4 to 5 children. It appears that the claimant could lift up to 10 pounds. In addition, the claimant testified that she could sit for 45 minutes and then must move and stand for 20 to 30 minutes. Thus, due to pain, it is reasonable to conclude that the claimant is limited to lifting up to 10 pounds, sitting 6 hours in an 8-hour workday, and standing or walking 2 hours in an 8 hour workday as long as the claimant has the option to change positions or stand every 30 to 60 minutes. The claimant testified that she has been depressed the last two years. She testified that when the pain level is

> high, she gets sad. Due to pain and
> depression, it is reasonable to find that the
> claimant has a need for limited contact with
> the public.

(R. at 14-15).

Plaintiff points out that the regulations indicate that activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2010 at 396). In Draper v. Barnhart, 425 F.3d 1127, 1131 (8th Cir. 2005), the court held that the fact that a person performs general housework does not preclude a finding of disability; the test is whether the claimant has the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. The ability to perform light housework or visit with friends provides little or no support for a finding that a person can perform full-time competitive work.

Plaintiff argues that the ALJ erred by giving undue weight to plaintiff's ability to perform daily household tasks to support a finding that plaintiff could perform substantial gainful activity. However, the ALJ relied not only on daily household tasks, but also on the fact that plaintiff goes to

12

Oklahoma to care for her mother,[1] that she cares for her father (but does not assist with heavy work),[2] that she works part-time in a baby nursery with 4 to 5 children,[3] that she signs at church every week and communicates every day on the computer[4] in support of his determination that plaintiff in not as limited as she alleges and that she could perform other work in the national economy.

The court will not reweigh the evidence. The ALJ set forth the specific evidence he relied on in finding that plaintiff was not as limited as she alleged; the ALJ linked his credibility determination to specific findings of fact fairly derived from the record. The court finds that the ALJ's credibility findings

---

[1]Plaintiff testified that she went to Oklahoma to take her mother to doctor's appointments and sat in the hospital with her (R. at 41).

[2]Medical records indicate she had been busy caring for her father (R. at 324). Plaintiff testified that her father cannot care for himself, and she takes care of his medical needs and takes him to doctor's appointments. She stated that she sees her father 2 or 3 times a week for ½ hour to 1 hour at a time (R. at 25). She also takes him shopping as needed (R. at 141).

[3]Plaintiff testified that she generally does this work 1-2 times a week, but during one week worked 5 days. Her shifts range from "four to five, maybe nine hours" (R. at 24). Although plaintiff indicated she was going to quit the job, she was still performing this work at the time of the hearing and had been doing so for three months (R. at 24-25).

[4]Although plaintiff testified that she is on the computer about three times a week (R. at 42), she had previously stated that she is on the computer talking to friends and family every day (R. at 145).

are reasonable; there is sufficient evidence which a reasonable mind might accept as adequate to support the ALJ's credibility findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 30th day of August, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow
U.S. District Senior Judge